UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFREDO BARAJAS ORTIZ,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER CHESTNUT, et al.,<br><br>Respondents. | No. 1:26-cv-01167-DC-SCR (HC)<br><br>ORDER GRANTING PETITIONER'S MOTION FOR A PRELIMINARY INJUNCTION<br><br>(Doc. No. 3) |

This matter is before the court on Petitioner Alfredo Barajas Ortiz's motion for a temporary restraining order (Doc. No. 3), which the court converted to a motion for preliminary injunction (*see* Doc. No. 6), filed in conjunction with his petition for a writ of habeas corpus brought under 28 U.S.C. § 2241, challenging his ongoing immigration detention. (Doc. No. 1.) For the reasons explained below, the court will grant Petitioner's motion for a preliminary injunction.

**BACKGROUND**

**A.     Factual Background**

Petitioner Alfredo Barajas Ortiz is a citizen and national of Mexico. (Doc. No. 1 at ¶ 1.) Petitioner has resided in the United States for over 34 years. (*Id.* at ¶ 2.) Petitioner entered the United States without inspection. (Doc. No. 1-1 at 8.)

Petitioner raised his three U.S. citizen children in the United States. (Doc. No. 1 at ¶ 8.)

1

Additionally, his mother and siblings are lawful permanent residents. (*Id.*) Petitioner has interacted with U.S. immigration authorities on several occasions while residing in the United States, including, most recently, on May 16, 2024, when Petitioner's son filed a form I-130 petition for alien relative on Petitioner's behalf. (Doc. Nos. 1 at ¶ 41; 1-1 at 93–94, 118.) On August 1, 2025, Petitioner's petition for alien relative was approved. (*Id.*)

On September 22, 2025, Petitioner was arrested outside his home by U.S. Immigration and Customs Enforcement ("ICE") agents. (Doc. No. 1 at ¶ 49.) On that same day, Petitioner was served a notice to appear charging him as removable as an alien present in the United States who has not been admitted or paroled in violation of Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i). (Doc. No. 1-1 at 8.) At the time of his arrest, Petitioner had resided continuously in the United States for over 34 years, had an approved I-130 petition filed by his U.S. citizen son, and had no criminal record, including no record of prior detention by U.S. immigration authorities. (Doc. Nos. 1 at ¶ 50; 1-1 at 93–94.)

On October 10, 2025, and December 12, 2025, Petitioner appeared before an immigration judge for a bond hearing. (Doc. No. 1 at ¶¶ 56–57.) On both occasions the immigration judge denied Petitioner's request for bond, finding that the immigration judge did not have jurisdiction to consider bond because Petitioner was subject to mandatory detention pursuant to 8 U.S.C. § 1225(b). (Doc. Nos. 1 at ¶¶ 56–57; 1-1 at 84, 87.) Petitioner is currently detained at the California City Corrections Center in California City, California. (Doc. Nos. 1 at ¶ 1; 1-1 at 40.)

**B.     Procedural Background**

On February 10, 2026, Petitioner filed his petition for writ of habeas corpus asserting the following claims against Respondents Christopher Chestnut, Orestes Cruz, Kristi Noem, Pamela Bondi, and Todd Lyons: (1) violation of 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii) relating to Petitioner's warrantless arrest; (2) violation of the Nava Broadcast Policy relating to his warrantless arrest without a totality-of-circumstances consideration; (3) violation of the Administrative Procedure Act relating to Respondents' policy of executing warrantless arrests such as Petitioner's; (4) violation of the Fourth Amendment to the United States Constitution relating to Petitioner's detention without probable cause; (5) violation of the Fifth Amendment to

the United States Constitution relating to Petitioner's prolonged detention without a bond hearing; (6) unlawful detention classification under 8 U.S.C. § 1225(b)(2)(A) relating to the immigration judges' refusal to consider Petitioner's bond requests due to an asserted lack of jurisdiction; and (7) violations of Petitioner's right to due process relating to the prolonged and inhumane conditions of Petitioner's confinement. (Doc. No. 1 at 26–36.) In his petition, Petitioner seeks an order (i) declaring his warrantless arrest and current detention unlawful; (ii) requiring Petitioner's immediate release from ICE custody; (iii) requiring Respondents to provide Petitioner with notice and a timely bond hearing should they attempt to re-detain him; and (iv) awarding Petitioner attorneys' fees and costs under the Equal Access to Justice Act. (*Id.* at 36–38.) That same day, Petitioner filed the pending motion for a temporary restraining order arguing that Petitioner's warrantless detention was unlawful, that Petitioner is improperly detained under the mandatory detention requirement of 8 U.S.C. § 1225(b)(2)(A), and that the inhumane conditions of Petitioner's confinement violate his constitutional right to due process. (Doc. No. 3 at 20–26.) Petitioner seeks a temporary restraining order requiring his immediate release. (*Id.* at 29–30.)

The court issued an order converting Petitioner's motion for a temporary restraining order into a motion for a preliminary injunction, setting a briefing schedule, and directing Respondents to distinguish this case from this court's prior orders in *Selis Tinoco v. Noem,* 1:25-cv-01762-DC-JDP, 2025 WL 3567862 (E.D. Cal. Dec. 14, 2025), *Labrador-Prato v. Noem,* 1:25-cv-01598-DC-SCR, 2025 WL 3458802 (E.D. Cal. Dec. 2, 2025), and *D.L.C. v. Wofford,* 1:25-cv-01996-DC-JDP, 2026 WL 25511 (E.D. Cal. Jan. 5, 2026), in which the court addressed the petitioners' due process claims. (Doc. No. 6.) Both parties were also ordered to address whether they oppose the court ruling directly on the petition, albeit only as to the due process claim, Count Five. (*Id.*)

On February 13, 2026, Respondents filed an opposition in which they state that they are "unaware of any substantively distinguishable facts between this case and the cases listed" but maintain that "Petitioner is subject to Section 1225's mandatory detention procedures." (Doc. No. 9 at 1.) Respondents did not address whether they would oppose the court ruling directly on the petition.

On February 17, 2026, Petitioner filed a reply thereto in which he requests that the court

3

1  rule directly on his habeas petition. (*Id.* at 11.)

2  **LEGAL STANDARD**

3  Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted). To obtain injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. 7, 20 (2008). The likelihood of success on the merits is the most important *Winter* factor. *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).

A party seeking injunctive relief must make a showing on all four prongs of the *Winter* factors to obtain injunctive relief. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011); *see Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) ("A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'") (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). A district court may consider "the parties' pleadings, declarations, affidavits, and exhibits submitted in support of and in opposition to the [motion for injunctive relief]." *Cal. Rifle & Pistol Ass'n, Inc. v. L.A. Cnty. Sheriff's Dep't*, 745 F.Supp.3d 1037, 1048 (C.D. Cal. 2024); *see also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). Any evidentiary issues "properly go to weight rather than admissibility." *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F. Supp. 3d 1177, 1185 (C.D. Cal. 2015).

**A.  Likelihood of Success on the Merits**

Petitioner contends that he is entitled to injunctive relief because he is entitled to, and has

/////

/////

/////

/////

twice been refused, a bond hearing under 8 U.S.C. § 1226(a).[1] (Doc. No. 3 at 15–17, 23–25.) In their opposition, Respondents argue that Petitioner is an applicant for admission who is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and thus is not entitled to a bond hearing. (Doc. No. 9 at 1–2.)

The complex statutory framework governing the detention and removal of inadmissible noncitizens in this country is at issue here. Sections 1225 and 1226 govern the detention of inadmissible noncitizens who have been placed in removal proceedings. 8 U.S.C. §§ 1225, 1226. Section 1226(a) is the "usual removal process" for inadmissible noncitizens. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). The noncitizen's removal commences with the filing of a Notice to Appear with the Immigration Court, initiated under 8 U.S.C. § 1229(a). *Ortiz Donis v. Chestnut*, No. 25-cv-01228-JLT-SAB, 2025 WL 2879514, at *3 (E.D. Cal. Oct. 9, 2025). The removal process provides for an evidentiary hearing before an immigration judge to allow the noncitizen to show they should not be removed. *Thuraissigiam*, 591 U.S. at 108. The noncitizen is permitted to apply for asylum if they would be persecuted if returned to their home country. *Id*. (citing 8 U.S. § 1229a(b)(4); 8 C.F.R. § 1240.11(c).) If asylum is not granted, and the noncitizen is ordered removed, they can appeal the order to the Board of Immigration Appeals. *Id*. (citing 8 U.S. §§ 1229a(c)(5), 1252(a)).

Section 1226 provides a discretionary detention scheme while removal proceedings are pending. 8 U.S.C. § 1226. Specifically, during the pendency of removal proceedings, the government may continue to detain the individual or may release them on bond or conditional parole. 8 U.S.C. § 1226(a)(2)(A)-(B). When a person is apprehended under section 1226, an ICE officer makes an initial custody determination, and the noncitizen will be released upon a showing "to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." *Diaz v. Garland*,

---

[1] Petitioner also contends that he is entitled to relief because he was arrested without a warrant in violation of 8 U.S.C. § 1357(a)(2), DHS regulations, and the Fourth Amendment, and because his prolonged, inhumane detention violates his right to due process. (Doc. No. 3 at 20–23, 25–26.) Because the court will grant Petitioner's motion and provide him the injunctive relief he seeks on statutory grounds, the court does not address his alternative arguments in this order.

1  53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)). If the noncitizen is detained
2  under section 1226(a), they are entitled to a bond hearing. *Jennings v. Rodriguez*, 583 U.S. 281,
3  306 (2018).
4  As to noncitizens seeking admission into the United States, section 1225 provides for
5  mandatory detention of certain individuals and, in some cases, expedited removal. 8 U.S.C. §
6  1225; *see also Ortiz Donis*, 2025 WL 2879514, at *4 ("While '§ 1226 applies to aliens already
7  present in the United States,' U.S. immigration law also 'authorizes the Government to detain
8  certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2),' a process that
9  provides for expedited removal.") (citing *Jennings*, 583 U.S. at 303.) Section 1225(b)(2)(A)
10 provides:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.[2]

14 An applicant for admission is defined as a noncitizen "present in the United States who has not
15 been admitted or who arrives in the United States (whether or not at a designated port of arrival
16 and including an alien who is brought to the United States after having been interdicted in
17 international or United States waters)." 8 U.S.C. § 1225(a)(1).
18 Until recently, the United States Department of Homeland Security ("DHS") has "applied
19 [section] 1226(a) and its discretionary release and review of detention to the vast majority of
20 noncitizens allegedly in this country without valid documentation." *Salcedo Aceros v. Kaiser*, No.
21 25-cv-06924-EMC, 2025 WL 2637503, at *3 (N.D. Cal. Sep. 12, 2025). On July 8, 2025, DHS
22 issued a memorandum to all employees of ICE stating that it had revisited its legal position on
23 detention and release authorities and that section 1225 "is the applicable immigration detention
24 authority for all applicants for admission." *See Garro Pinchi v. Noem*, No. 25-cv-05632-PCP,
25 2025 WL 3691938, at *4 (N.D. Cal. Dec. 19, 2025). In *Matter of Yajure Hurtado*, the BIA,

---

[2] Subparagraph (B) of 8 U.S.C. § 1225(b)(2) sets forth exceptions to subparagraph (A). Subparagraph (C) of the same section addresses the [treatment] of [noncitizens] arriving from contiguous territory." 8 U.S.C. § 1225(b)(2)(C). Neither subparagraph appears to apply here.

without directly addressing the DHS memorandum, adopted this broader interpretation of "applicants for admission" and held that under this broader interpretation, all noncitizens who entered the United States without inspection are subject to mandatory detention under section 1225. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216. Following these developments, DHS began directing federal immigration officials to seek expedited removal of noncitizens pursuant to section 1225(b)(2). *See Garcia v. Noem*, No. 25-cv-02180-DMS-MMP, 2025 WL 2549431, at *5 (S.D. Cal. Sept. 3, 2025); *Salcedo Aceros*, 2025 WL 2637503, at *4.

In their opposition, Respondents reiterate the government's position that section 1225 applies broadly to all noncitizens, including Petitioner, who "entered the United States illegally without inspection." (Doc. No. 9 at 1–2) (citing *Buenrostro-Mendez v. Bondi*, --- F.4th ---, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026)). But Respondents' argument that section 1225 applies to all noncitizens who entered the United States without inspection has been consistently rejected by a majority of courts in this district and courts across the country. *See Valencia Zapata v. Kaiser,* No. 25-cv-07492-RFL, 2025 WL 2741654, at *10 (N.D. Cal. Sep. 26, 2025) (citing *Salcedo Aceros*, 2025 WL 2637503, at *8) (collecting cases). Instead, those courts have generally held that section 1226 rather than section 1225 is the appropriate section to apply in cases in which a noncitizen is already living in the United States. *See Morillo v. Albarran*, No. 25-cv-01533-DJC-AC, 2025 WL 3190899, at *4 (E.D. Cal. Nov. 15, 2025) ("As Petitioner has been present in the United States for 19 years . . . he is likely to succeed on the merits of his claim that he is unlawfully detained under Section 1225(b)(2)'s mandatory detention provision."); *Huerta v. Bondi*, No. 25-cv-00941-JLT-HBK, 2026 WL 366709, at *1 (E.D. Cal. Feb. 10, 2026) (holding that the petitioner, who "entered the United States without inspection and has been residing continuously here for more than 20 years without any contact with immigration authorities . . . is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A)"); *J.A.C.P. v. Wofford*, No. 25-cv-01354-KES-SKO, 2025 WL 3013328 (E.D. Cal. Oct. 27, 2025) (same as to petitioner who had resided in United States for four years before detention); *Bernardo Aquino v. Larose*, No. 25-cv-02904-RSH-MMP, 2025 WL 3158676, at *3 (S.D. Cal. Nov. 12, 2025) ("The overwhelming majority of courts to address the issue have agreed that Section 1226(a), rather

than the mandatory detention provision of Section 1225(b)(2)(A), applies to a noncitizen . . . who has resided in the United States for many years.") (citing cases).

The court agrees with the majority view, which rejects the government's new interpretation of section 1225 as the applicable immigration detention authority for all inadmissible noncitizens. Therefore, Petitioner was entitled to a bond hearing under section 1226(a). *Matter of Adeniji*, 22 I. & N. Dec. 1102 (BIA Nov. 3, 1999) (holding that noncitizen detained pursuant to section 1226(a) was entitled to the bond procedures provided in 8 C.F.R. § 236.1(c)(8) (1999)). Petitioner has demonstrated a likelihood of success on his claim that he has been unlawfully denied a bond hearing in violation of 8 U.S.C. § 1226(a).

**B.     Irreparable Harm**

Petitioner will suffer irreparable harm in the absence of injunctive relief. Broadly speaking, "[d]eprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) (citation omitted.) Further, the Ninth Circuit has recognized the "irreparable harms imposed on anyone subject to immigration detention" including "the economic burdens imposed on detainees and their families as a result of detention." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). Petitioner alleges that his "confinement continues to cause extreme emotional and financial hardship to his [legal permanent resident] mother, his wife, and his three U.S. citizen children." (Doc. No. 3 at 27.)

Therefore, the second *Winter* factor weighs in favor of granting Petitioner's request for injunctive relief.

**C.     Balance of the Equities and Public Interest**

The court now turns to the last two *Winter* factors. The balance of the equities and public interest analyses merge when the government is the opposing party, as is the case in this action. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

"Just as the public has an interest in the orderly and efficient administration of this country's immigration laws, [ ] the public has a strong interest in upholding procedural protections against unlawful detention." *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL

8

5074312, at *4 (N.D. Cal. Aug. 23, 2020) (internal quotation omitted). Though Respondents have an interest in enforcing immigration laws, Respondents cannot reasonably assert that the public and government will be harmed in any legally cognizable sense by being enjoined from detaining Petitioner in violation of the applicable law, which is the case here. This relief also benefits the public because "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022). Accordingly, the court finds that the balance of equities and public interest weigh in favor of injunctive relief and consequently, all four *Winter* factors weigh in favor of Petitioner.

**D.     Remedy**

In his motion, Petitioner seeks his immediate release and clarifies that he "doesn't request a bond hearing as the remedy." (Doc. No. 3 at 11.) Additionally, Petitioner argues that, should the government seek to re-detain Petitioner following his release, the court should enjoin the government from doing so "absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice . . ., and a timely hearing" at which "the Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight and that no less restrictive alternative can reasonably ensure his appearance and community safety." (Doc. No. 10 at 11.) In their opposition, Respondents do not address whether Petitioner should be entitled to the lesser remedy of a bond hearing, or what the proper standard of proof should be at any future bond hearing.

The purpose of injunctive relief is to return the parties to the status quo ante, "which is 'not simply [] any situation before the filing of a lawsuit, but instead [] the last uncontested status which preceded the pending controversy.'" *Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1119 (E.D. Cal. Sep. 23, 2025) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). Here, Respondents contend that Petitioner was detained in September 2025 pursuant to section 1225(b)(2)(A) and have explicitly denied that he was detained under section 1226, or any other basis. (Doc. No. 9 at 1–2.) Because Respondents do not assert any alternative basis for Petitioner's detention, and do not provide any extenuating circumstances that would warrant Petitioner's continued unlawful detention pending a bond hearing, the court finds that the

1  appropriate relief is Petitioner's immediate release. *See Lepe*, 801 F. Supp. 3d at 1119.

2  However, the court does not agree that the government would bear the burden of proof for
3  any future bond hearing, should the government seek to re-detain Petitioner following his release.
4  The court has previously found that the government bears this burden where the noncitizen had
5  previously been released from ICE detention, and therefore ICE had previously determined that
6  the petitioner was neither a flight risk nor a risk to community safety. *See, e.g., Labrador-Prato*,
7  2025 WL 3458802; *Selis Tinoco*, 2025 WL 3567862. In those cases, the court found that due
8  process required that the government bear the burden of justifying the petitioners' re-detention
9  without bond because those petitioners maintained a liberty interest in their previous release from
10  custody. *Id*. Here, on the other hand, the government has made no determination regarding
11  Petitioner's flight or safety risk and has not previously released Petitioner from detention.
12  Accordingly, because the court will release Petitioner on statutory rather than constitutional
13  grounds, the court finds that the regulatory protections provided in 8 C.F.R. § 1236.1(c)(8) are the
14  proper standard for Petitioner's initial bond hearing, should he be detained at some later point
15  following his release pursuant to this order. *See Matter of Adeniji*, 22 I. & N. Dec. 1102 at 1112
16  (citing 8 C.F.R. § 1236.1(c)(8)). Other courts in the Ninth Circuit have recognized this distinction
17  in the burden of proof as to claims predicated on constitutional relief, as opposed to claims
18  predicated on statutory relief. *See, e.g., Zaitsev v. Warden, Adelanto ICE Processing Ctr.*, No. 26-
19  cv-00454-SPG-AS, 2026 WL 391429, at *11 (C.D. Cal. Feb. 9, 2026) (noting that where the
20  immigration judge placed the burden of proof on the government in a 1226(a) hearing, "the
21  [immigration judge] held the government to a higher standard than set out in BIA regulations, *see*
22  8 C.F.R. § 1236.1(c)(8), and the same standard or higher than what the Constitution requires").

23  **E.     Security**

24  Federal Rule of Civil Procedure 65(c) permits a court to grant preliminary injunctive relief
25  'only if the movant gives security in an amount that the court considers proper to pay the costs
26  and damages sustained by any party found to have been wrongfully enjoined or restrained.'"
27  *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting Fed. R. Civ. P. 65(c)).
28  "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion

10

as to the amount of security required, if any.'" *Id*. (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, '[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" *Johnson*, 572 F.3d at 1086 (quoting *Jorgensen*, 320 F.3d at 919). Neither party addresses the issue of security in their briefing.

The court finds that no security is required here. Courts regularly waive security in cases like this one. *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Lepe*, 801 F. Supp. 3d at 1120; *Pinchi v. Noem*, No. 25-cv-05632- RMI-RFL, 2025 WL 1853763, at *4 (N.D. Cal. Jul. 4, 2025).

## CONCLUSION

For the reasons stated above:

1. Petitioner's motion for a temporary restraining order, converted to a motion for preliminary injunction (Doc. No. 3), is GRANTED as follows:

    a. Respondents shall immediately release Petitioner from their custody; and

    b. Should Respondents attempt to re-detain Petitioner, they shall provide him with a bond hearing pursuant to 8 C.F.R. § 1236.1(c)(8) at which Petitioner shall bear the burden of showing that he is not a flight risk or a risk to community safety; and

2. This matter is referred to the assigned magistrate judge for further proceedings.

IT IS SO ORDERED.

Dated: **February 24, 2026**

Dena Coggins
United States District Judge